IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JONATHAN LACY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:22-cv-01335 |
| | ) | |
| COOK COUNTY, COOK COUNTY | ) | Honorable Sara L. Ellis |
| SHERIFF THOMAS DART, SERGEANT | ) | |
| JUSTIN GUST, SERGEANT | ) | JURY DEMANDED |
| ANTHONYLUPPINO, SERGEANT | ) | |
| ALBERT STUBENVOLL, OFFICER | ) | |
| TERRY JACKSON, OFFICER KENNETH | ) | |
| WOODS, OFFICER J. OLIVAS, OFFICER | ) | |
| MARTIN HILL, OFFICER C. HILL, | ) | |
| OFFICER G. FLORES, OFFICER DEPUTY | ) | |
| SHERIFF TIMOTHY PRINE, OFFICER F. | ) | |
| HUGHES, OFFICER GABRIEL HARPER | ) | |
| and OFFICER ERIEL OLEA, | ) | |

Defendants.

## PLAINTIFF'S AMENDED COMPLAINT

NOW COMES the Plaintiff, JONATHAN LACY ("LACY"), by his attorney, Ronald S. Cope, complains of Defendants, COOK COUNTY, COOK COUNTY SHERIFF THOMAS DART, LIEUTENANT JUSTIN GUST, LIEUTENANT ANTHONY LUPPINO, SERGEANT ALBERT STUBENVOLL, OFFICER TERRY JACKSON, OFFICER KENNETH WOODS, OFFICER J. OLIVAS, OFFICER MARTIN HILL, OFFICER C. HILL, OFFICER G. FLORES, DEPUTY SHERIFF TIM PRINE, OFFICER F. HUGHES, OFFICER GABRIEL HARPER, and OFFICER ERIEL OLEA, and states as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction of this action pursuant to 28 U.S.C. Sec. 1331, as all claims asserted herein are brought pursuant to 28 U.S.C. Sec. 1983 and pose federal questions.

1

2. Venue is proper under 28 U.S.C. Sec. 1391(b), as all parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within this judicial district.

## PARTIES

3. Plaintiff LACY is an inmate currently incarcerated in Pinckneyville Correctional Center located in Pinckneyville, Illinois. LACY's Prisoner Identification Number is 20200420040.

4. At all relevant times, from approximately April 20, 2020, through approximately July 11, 2022, LACY was incarcerated in the Cook County Jail, located in Chicago, Illinois.

5. The Cook County Sheriff's Office is responsible for overseeing the Cook County Jail and in doing so implements the policies and practices in place within the Cook County Jail, employs staff and leadership within the Cook County Jail, and otherwise controls and is responsible for the operation of the Cook County Jail.

6. The Cook County Sheriff serves as the Chief Law Enforcement Officer in the County and is the head of the Cook County Sheriff's office, responsible for all departments under the Sheriff Office's purview, including the Department of Corrections and, by extension, the Cook County Jail.

7. The Cook County Sheriff is an elected position, and Defendant Thomas Dart ("Dart") has served as the Cook County Sheriff since his election in 2006.

8. As Sheriff, Dart is responsible for all final policies and practices implemented within the Cook County Jail.

9. The Sheriff's Office is an agency of Cook County, a municipal corporation located within the State of Illinois. Cook County is responsible for all money damages against the Sheriff's Office, its officers, and its elected officials acting within the scope of their official duties, including Sheriff Dart and correctional officers working at the Cook County Jail.

10. At all relevant times, Sgt. JUSTIN GUST ("GUST") was employed by the Cook County Sheriff's Office as a Supervisor Lieutenant at the Cook County Jail.

11. At all relevant times, Sgt. ANTHONY LUPINO ("LUPINO") was employed the Cook County Sheriff's Office as a Supervisor Lieutenant at the Cook County Jail.

12. At all relevant times, Sgt. ALBERT STUBENVOLL ("STUBENVOLL") was employed by the Cook County Sheriff's Office as a Sergeant at the Cook County Jail.

13. At all relevant times, Ofc. TERRY JACKSON ("JACKSON") was employed by the Cook County Sheriff's Office as a Correctional Officer at the Cook County Jail.

14. At all relevant times, Ofc. KENNETH WOODS ("WOODS") was employed by the Cook County Sheriff's Office as a Correctional Officer at the Cook County Jail.

15. At all relevant times, Ofc. J. OLIVAS ("OLIVAS") was employed by the County of Cook as a Correctional Officer at the Cook County Jail.

16. At all relevant times, Ofc. MARTIN HILL ("M. HILL") was employed by the Cook County Sheriff's Office as a Correctional Officer at the Cook County Jail.

17. At all relevant times, Sgt. C. HILL("C. HILL") was employed by the County of Cook as a Correctional Officer at the Cook County Jail.

18. At all relevant times, Ofc.. G. FLORES ("FLORES") was employed by the County of Cook as a Correctional Officer at the Cook County Jail.

19. At all relevant times, Dpty. TIM PRINE ("PRINE") was employed by the Cook County Sheriff's Office as a Sheriff's Deputy at the Cook County Jail.

20. At all relevant times, Ofc.. HUGHES ("HUGHES") was employed by the County of Cook as a Correctional Officer at the Cook County Jail.

21. At all relevant times, Ofc. GABRIEL HARPER ("HARPER") was employed by the County of Cook as a Correctional Officer at the Cook County Jail.

22. At all relevant times, Ofc. ERIEL OLEA ("OLEA") was employed by the Cook County Sheriff's Office as a Correctional Officer at the Cook County Jail.

## COMMON ALLEGATIONS

23. At all times relevant to this suit, LACY was a pretrial detainee at the COOK COUNTY JAIL awaiting a final disposition of the charges brought against him.

24. At all times relevant to this suit, and to this day, LACY is paralyzed and wheelchair bound, and is reliant on his wheelchair for mobility.

25. At all times relevant to this suit, and to this day, LACY requires wheelchair accessible accommodations including but not limited to toilet access, shower access, and a wheelchair accessible bed.

26. When inmates first arrive at the Cook County Jail they are given an initial medical and mental health screening.

27. Through this screening, and prior to May 11, 2020, Sheriff Dart, the Cook County Sherriff's office,, and its employees, including GUST, LUPPINO, STUBENVOLL, JACKSON, WOODS, M. HILL, PRINE, HARPER, HUGHES, C. HILL, OLIVAS, FLORES, and OLEA were put on notice of LACY's disability. Additionally, prior to his incarceration at the Cook County Jail, LACY had been taking anti-depressants for at least 17 years, since he was paralyzed.

28. LACY's history with depression, and use of anti-depressants was also revealed to the Cook County Sheriff's Office and Defendants through the initial screening process.

29. Following his incarceration at the Cook County Jail, LACY had been requesting anti-depressants due to a steady decline in his mental health.

30. On or about May 11, 2020, LACY called his family to obtain information about his mother, who was experiencing severe issues related to the loss of both her kidneys.

31. On or about May 11, 2020, LACY was informed by his siblings that his mother was critically ill and in the hospital.

32. Upon receiving this information, on or about May 11, 2020, LACY began to experience a severe mental health breakdown.

33. At the same time, or shortly thereafter, STUBENVOLL instructed Cook County Sheriff's Office staff, including GUST, LUPPINO, JACKSON, WOODS, M. HILL, PRINE, HARPER, HUGHES, C. HILL, OLIVAS, FLORES, and OLEA to secure the tier 4A bullpen area where LACY was located and return inmates to their cells.

34. M. HILL, JACKSON, OLEA and STUBENVOLL, approached LACY, who was experiencing a mental health breakdown, in order to remove him from the bullpen area, at which point LACY asked JACKSON for a psychiatric evaluation.

35. JACKSON ignored LACY's request, as did M. HILL, OLEA, and STUBENVOLL.

36. Amidst his mental health breakdown, LACY then attempted to remove the leg from his wheelchair and threatened to inflict harm upon himself.

37. LACY was visibly distraught, requesting a psychiatric evaluation, and threatening self-harm. Despite this, JACKSON and the other nearby correctional officers, M. HILL, OLEA, and STUBENVOLL denied LACY's request for a psychiatric evaluation.

38. Instead of attempting to help LACY, who was visibly experiencing a mental health crisis and threatening self-harmJACKSON, M. HILL, OLEA, and STUBENVOLLcalled GUST, who appeared with PRINE, LUPINO, WOODS, and HARPER.

39. Instead of attempting to help LACY, who was visibly experiencing a mental health crisis and threatening self-harm, GUST ordered LACY to return to his cell.

40. When LACY did not respond, and instead continued to spiral and beg for medical assistance and a psychiatric evaluation, PRINE and LUPPINO ripped the wheelchair part from LACY as at least seven of the remaining officers, including M. HILL, JACKSON, OLEA, STUBENVOLL, WOODS, GUST, and HARPER violently tackled LACY out of his wheelchair and forced him to the ground.

41. LACY pleaded that he needed to see a mental health doctor and again stated that he was going to harm himself.

42. Instead of taking LACY to the medical center, GUST, WOODS and JACKSON, brought the visibly distraught LACY to his cell where LACY was thrown face down onto the bottom bunk, as he once again requested a psychiatric evaluation.

43. Once in his cell, LACY removed the arm of his wheelchair and hit the door in order to get the guards' attention, again threatening to harm himself.

44. At no point during his mental health crisis did LACY threaten to harm others or exhibit aggressive behavior toward other inmates or guards.

45. STUBENVOLL then aimed oleoresin capsicum spray ("O.C. spray" or "pepper spray") through the hatch in LACY's cell door and yelled for LACY to drop the wheelchair arm.

46. LACY complied, and backed away from the cell entrance, dropping the wheelchair arm on his bed.

47. Lacy, who was visibly upset and still requesting a psychiatric evaluation, then took his bedsheet and tied it around his neck and over his head. At this time, LACY continued to threaten self-harm if he did not receive a psychiatric evaluation.

48. STUBENVOLL, HARPER, and one other named defendant then entered LACY's cell with STUBENVOLL's pepper spray drawn and removed the first wheelchair arm.

49. The three then left, reclosing LACY's cell door and continuing to ignore his requests for a psychiatric evaluation.

50. LACY removed the other armpiece, and again began hitting the door in order to get the guards' attention.

51. STUBENVOLL, GUST, OLEA, WOODS and JACKSON reentered the cell, at which point LACY put his hands up to show he did not intend to harm any of the officers or other inmates.

52. Although LACY had already put his hands up, GUST twisted and ripped the wheelchair piece from LACY.

53. Other officers then flooded the cell, such that at least six of the named defendants were present, including STUBENVOLL, GUST OLEA, WOODS, and JACKSON. The officers held LACY down so they could forcibly and violently remove him from his chair, kicking him and slamming him to the ground of his cell.

54. GUST then dragged LACY from the doorway of his cell, as LACY continued to plea for a psychiatric evaluation.

55. Instead of helping LACY, GUST threw LACY by his shirt and collar to the back of his cell, where he was slammed into the cell wall.

56. Meanwhile, at least six of the named Defendant officers watched, hearing LACY's repeated requests for a psychiatric evaluation, observing the violence imposed against LACY, and doing nothing to intervene.

57. After throwing LACY to the back of his cell, GUST shoved LACY's head, as he attempted to crawl forward for help while OLEA and one other named defendant brace GUST for leverage and support.

58. GUST and STUBENVOLL then fully enter the cell and GUST delivers at least seven closed fist punches to LACY's head and face while STUBENVOLL holds LACY down, leaving LACY faint and dizzy.

59. As GUST beats LACY, with the assistance of STUBENVOLL at least five other officers enter the cell.

60. Following the beating, LACY was placed in handcuffs, and his wheelchair was removed from his cell.

61. The Defendants then exit the cell, leaving LACY physically injured, in a continued mental health crisis, and unable to move without his wheelchair.

### Count I – 8th and 14th Amendment Use of Excessive Force
### (GUST, STUBENVOLL, OLEA, WOODS, and JACKSON)

62. LACY hereby reasserts and incorporates Paragraph Nos. 1-57 as though fully set forth herein.

63. As set forth above, GUST intentionally used force against LACY at several instances during the altercation described herein, including when he threw LACY around his cell, tore LACY out of his wheelchair, and, ultimately, delivered at least seven closed fist punches to LACY's face and head.

64. Similarly, STUBENVOLL, OLEA, WOODS, and JACKSON intentionally used force against LACY when they kicked and forcibly removed him from his wheelchair.

65. At none of the above referenced times was the wheelchair-bound LACY acting aggressively towards any other guards or inmates.

66. Instead, LACY was experiencing a mental-health crisis, a fact that he repeatedly communicated to the correctional officers on duty.

67. Additionally, the force used against LACY went beyond what was required to prevent LACY from harming himself or anyone in the vicinity.

68. GUST, STUBENVOLL, OLEA, WOODS, and JACKSON were intentionally and excessively violent against LACY for the purpose of harming LACY, and not in a good faith effort to maintain or restore security and order.

69. As a direct and proximate result thereof, LACY sustained serious and permanent physical, mental, and emotional injuries, pain and suffering, emotional trauma, and the deprivation of constitutional rights.

WHEREFORE, the Plaintiff, JONATHAN LACY, respectfully requests that this Court enter judgment for compensatory and punitive damages against the Defendants,. GUST, STUBENVOLL, OLEA, WOODS, and JACKSON, and to award Plaintiff his attorneys' fees and costs under 42 U.S.C. § 1988, and for any other relief as this Court deems necessary and appropriate.

### Count II – 8th and 14th Amendment Failure to Intervene
**(STUBENVOLL, OLEA, WOODS, JACKSON, M. HILL, PRINE, LUPPINO, C. HILL, FLORES, OLIVAS, HUGHES and HARPER)**

70. LACY hereby reasserts and incorporates Paragraph Nos. 1-69 as though fully set forth herein.

71. As the events unfolded on May 11, 2020, PRINE, LUPPINO, and HARPER knew that the other officers, in particular GUST, STUBENVOLL, OLEA, WOODS, and JACKSON were using excessive force against LACY as they kicked him, forcibly removed him from his wheelchair, and tossed him around his cell, amongst other things.

72. Moreover, the PRINE, LUPPINO, and HARPER had the opportunity to stop the other officers from inflicting the repeated and excessive violence against LACY.

73. PRINE, LUPPINO, and HARPER failed to take reasonable steps to prevent the excessive violence inflicted against LACY.

74. PRINE, LUPPINO, and HARPER failed to act, and as a result of this failure, LACY sustained serious and permanent physical injuries, pain and suffering, emotional trauma, and the deprivation of constitutional rights.

75. Similarly, STUBENVOLL, OLEA, WOODS, JACKSON, M. HILL, PRINE, LUPPINO, C. HILL, FLORES, OLIVAS, HUGHES and HARPER knew that GUST was inflicting repeated excessive force against LACY when he threw him to the back of his cell, dragged him around, and punched him in the face and head with a closed fist at least seven times.

76. In particular, STUBENVOLL, a Lieutenant of the same rank as GUST at the time of the incident, held LACY down and watched as GUST delivered the seven closed fist blows to LACY.

77. STUBENVOLL, OLEA, WOODS, JACKSON, M. HILL, PRINE, LUPPINO, C. HILL, FLORES, OLIVAS, HUGHES and HARPER had the opportunity to stop GUST from inflicting the repeated and excessive violence against LACY.

78. In particular, STUBENVOLL could have released LACY or otherwise intervened to prevent the seven blows that GUST delivered to LACY.

79. However, STUBENVOLL, OLEA, WOODS, JACKSON, M. HILL, PRINE, LUPPINO, C. HILL, FLORES, OLIVAS, HUGHES and HARPER failed to take reasonable steps to prevent the excessive violence inflicted against LACY.

80. As a result, LACY sustained serious and permanent physical, mental, and emotional injuries, pain and suffering, emotional trauma, and the deprivation of constitutional rights.

WHEREFORE, the Plaintiff, JONATHAN LACY, respectfully requests that this Court enter judgment for compensatory and punitive damages against the Defendants, STUBENVOLL, OLEA, WOODS, JACKSON, M. HILL, PRINE, LUPPINO, C. HILL, FLORES, OLIVAS, HUGHES and HARPER, and to award Plaintiff his attorneys' fees and costs under 42 U.S.C. § 1988, and for any other relief as this Court deems necessary and appropriate.

### Count III – 8th and 14th Amendment Failure to Provide Medical Attention
**(GUST, STUBENVOLL, OLEA, WOODS, JACKSON, M. HILL, PRINE, LUPPINO, HARPER, HUGHES, C. HILL, OLIVAS, and FLORES )**

81. LACY hereby reasserts and incorporates Paragraph Nos. 1-80 as though fully set forth herein.

82. As set forth above, LACY was in the midst of a mental health crisis.

83. Even before the events at issue, LACY had requested antidepressants due to his declining mental state.

84. On May 11, 2020, following his phone call with his family, LACY repeatedly requested a psychiatric evaluation.

85. Furthermore, on May 11, 2020, LACY repeatedly threatened to harm himself if he did not receive psychiatric help.

86. LACY's mental health crisis was obvious and clearly expressed, and even a non-medical professional would have realized that LACY was experiencing a mental health emergency.

87. Furthermore, even a non-medical professional would have realized by LACY's threats that he faced a serious risk of self-harm if he did not receive medical assistance.

88. GUST, STUBENVOLL, OLEA, WOODS, JACKSON, M. HILL, PRINE, LUPPINO, HARPER, HUGHES, C. HILL, OLIVAS, and FLORES (hereinafter "the Employee Defendants") intentionally and consciously failed to take reasonable measures to provide treatment for LACY's mental health crisis.

89. In particular, the Employee Defendants failed to provide LACY with a psychiatric evaluation, despite his clearly expressed need and repeated requests.

90. As a direct and proximate result thereof, LACY sustained serious and permanent physical, mental, and emotional injuries, pain and suffering, emotional trauma, and the deprivation of constitutional rights.

WHEREFORE, the Plaintiff, JONATHAN LACY, respectfully requests that this Court enter judgment for compensatory and punitive damages against the Employee Defendants, and to award Plaintiff his attorneys' fees and costs under 42 U.S.C. § 1988, and for any other relief as this Court deems necessary and appropriate.

### Count IV – Policy and Practice *Monell* Violation
### (Cook County Sheriff Thomas Dart)

91. LACY hereby reasserts and incorporates Paragraph Nos. 1-90 as though fully set forth herein.

92. As Cook County Sheriff, DART is responsible for ensuring detainees' medical needs are adequately met and that employees of the Cook County Jail and Cook County Sheriff's

Officer carry out their required duties of care. As such, DART has policymaking authority over medical care for detainees.

93. As set forth above, at the time of the events complained of herein, LACY had a serious medical need that was known to the Employee Defendants.

94. Furthermore, the Employee Defendants were aware of the serious risk of harm presented and were deliberately indifferent to that risk.

95. The misconduct described in this Complaint was undertaken pursuant to the policy and practice of Sheriff Dart in that:

   a. Sheriff Dart manifested deliberate indifference by maintaining policies and practice that fail to adequately address mental health emergencies that may occur within the Cook County Jail.

   b. Sheriff Dart maintains policies and practices that allow and cause its staff to disregard people suffering from mental health crisis by failing to adequately respond to mental health emergencies.

   c. Sheriff Dart fails to establish necessary training to identify and respond to mental health emergencies amongst inmates.

96. One or more of these policies and practices were maintained and implemented by DART with deliberate indifference to LACY's constitutional rights and was a moving force behind the violation of those rights.

97. Furthermore, these policies and practices were widespread, and were known, or should have been known, to DART, as Cook County Sheriff.

98. In fact, theses widespread issues within the Cook County Jail, were discussed in a 2008 letter from the United States Department of Justice, which stated, in part "[the Cook County

Jail] fails to provide adequate and timely care to inmates with serious or potentially serious acute medical conditions…".

99. Similarly, failures by employees of the Cook County Sheriff's office to provide adequate medical care has been the subject of multiple lawsuits during Sheriff Dart's tenure, including but certainly not limited to *Bobel v. Ledvora* (18-cv-05475), *Parish v. Sheriff of Cook County and Cook County* (07-cv-04369), *Tyson v. Cook County, et al.* (18-cv-01733), and *Johnson v. Dart, et. al.* (16-cv-0144).

100. While not dispositive in the present matter, these lawsuits only scratch the surface and demonstrate the extensive history of the inadequate medical care given to detainees at the Cook County Jail.

101. Furthermore, Sheriff Dart knew that it was highly predictable that his staff may use excessive force in responding to prisoners suffering mental health emergencies.

102. In fact, just moments before the incident at issue in the present complaint, another Detainee had attempted to hang himself and amidst his own mental health crisis was violently kicked and beaten by some of the same Defendants involved in the present matter.

103. The combination of Sheriff Dart's failure to implement adequate policies and practices, and provide adequate training to ensure detainees are given adequate medical care and to ensure employees are properly trained to handle mental health emergencies caused the aforementioned violations of Plaintiff's Fourteenth Amendment rights, and as a result proximately caused LACY to sustain serious and permanent physical, mental, and emotional injuries, pain and suffering, emotional trauma, and the deprivation of constitutional rights.

WHEREFORE, the Plaintiff, JONATHAN LACY, respectfully requests that this Court enter judgment for compensatory damages against the Defendant, COOK COUNTY SHERIFF

THOMAS DART, and to award Plaintiff his attorneys' fees and costs under 42 U.S.C. § 1988, and for any other relief as this Court deems necessary and appropriate.

### Count V – Indemnity
### (Cook County)

104. LACY hereby reasserts and incorporates Paragraph Nos. 1-103 as though fully set forth herein.

105. At the time of the incident the Employee Defendants were employees of the Cook County Sheriff's Office, an agency of Cook County.

106. Similarly, at the time of the incident, DART served as Cook County Sheriff, an elected official of Cook County.

107. All Defendants were acting within the scope of their employment in committing the misconduct described herein.

108. As the municipal corporation that empowers and ultimately governs the Cook County Sheriff's Office, Cook County is obligated to pay any judgment entered against individual Defendants within the scope of their employment for Cook County.

WHEREFORE, the Plaintiff, JONATHAN LACY, respectfully requests that, COOK COUNTY be ordered to indemnify Defendants DART, GUST, STUBENVOLL, OLEA, WOODS, JACKSON, M. HILL, PRINE, LUPPINO, HUGHES, C. HILL, OLIVAS, FLORES, or HARPER, COOK COUNTY for any or other relief that may be afforded to LACY as a result of the present lawsuit, and for any other relief as this Court deems necessary and appropriate.

### JURY DEMAND

The Plaintiff, JONATHAN LACY, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

JONATHAN LACY

By: /s/ Ronald S. Cope
       One of His Attorneys

Ronald S. Cope, ARDC# 0515256
Schain, Banks, Kenny & Schwartz, Ltd.
70 W. Madison Street, Suite 5400
Chicago, Illinois 60602
Phone: (312) 345-5700
Fax: (312) 345-5701
rcope@schainbanks.com