IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JONATHAN LACY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 22-cv-1335 |
| | ) | |
| v. | ) | Judge Jeffrey I. Cummings |
| | ) | |
| COOK COUNTY, COOK COUNTY SHERIFF THOMAS DART, SERGEANT JUSTIN GUST, SERGEANT ANTHONY LUPPINO, SERGEANT ALBERT SUBENVOLL, OFFICER KENNETH WOODS, OFFICER J. OLIVAS, OFFICER MARTIN HILL, OFFICER C. HILL, OFFICER G. FLORES, OFFICER DEPUTY SHERIFF TIMOTHY PRINE, OFFICER F. HUGHES, OFFICER GABRIEL HARPER, and OFFICER ERIEL OLEA, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jonathan Lacy brings this action pursuant to 42 U.S.C. §1983 against defendants Cook County, Sheriff Thomas Dart, and thirteen individual Cook County Sheriff's Office supervisory officers, officers, and a deputy, alleging, *inter alia*, excessive force, failure to intervene, and failure to provide medical treatment related to an incident at Cook County Jail on May 11, 2020. (Dckt. #51). Currently before the Court is defendants' motion to dismiss plaintiff's second amended complaint, (Dckt. #54), which is denied for the reasons stated below.

**I.  BACKGROUND**

The following facts are taken from plaintiff's amended complaint, (Dckt. #51), and are pertinent to defendants' motion.

1

Plaintiff Jonathan Lacy is paralyzed, wheelchair bound, and reliant on his wheelchair for mobility. (Dckt. #51 ¶24). Plaintiff has been taking anti-depressants for at least seventeen years since the time he became paralyzed. (*Id*. ¶27). From April 20, 2020 through July 11, 2022, plaintiff (who is currently incarcerated in Pinckneyville Correctional Center) was incarcerated at Cook County Jail. (*Id*. ¶¶3-4). Defendants were put on notice of plaintiff's physical disability and mental health history through plaintiff's initial medical and mental health screening upon arrival at Cook County Jail. (*Id*. ¶¶26-28).

On May 11, 2020, plaintiff began to experience a severe mental health breakdown after receiving news that his mother was critically ill. (*Id*. ¶¶30-32). At about the same time, one of defendant supervisory officers instructed several of the defendant officers to secure the bullpen area where plaintiff was located and to return inmates to their cells. (*Id*. ¶33). Certain defendant officers approached plaintiff to remove him from the area. (*Id*. ¶34). Plaintiff did not return to his cell but instead requested a psychiatric evaluation, attempted to remove the leg from his wheelchair, and threatened to harm himself. (*Id*. ¶¶34-37). The defendant officers denied plaintiff's request for a psychiatric evaluation and one of the supervisory officers ordered plaintiff to return to his cell. (*Id*. ¶¶37-39). When plaintiff did not respond or comply, two defendant officers ripped the wheelchair part from plaintiff and at least seven of the other defendant officers violently tackled plaintiff out of his wheelchair and forced him to the ground. (*Id*. ¶40).

As plaintiff pleaded to see a mental health doctor and reiterated that he was going to hurt himself, several defendant officers brought him to his cell and threw him face down onto the bottom bunk. (*Id*. ¶42). Once in his cell, plaintiff removed the arm of his wheelchair, started hitting the door to get the guards' attention, and again threatened to harm himself. (*Id*. ¶40).

2

Plaintiff dropped the wheelchair arm after being ordered to do so by one of the defendant supervisory officers, who had threatened to spray him with oleoresin capsicum spray (or pepper spray). (*Id*. ¶¶43, 45-46). Plaintiff then took a bedsheet and tied it around his neck and over his head as he continued to threaten self-harm if he did not receive a psychiatric evaluation. (*Id*. ¶47).

After defendant officers entered his cell to remove the first wheelchair arm and left, plaintiff removed the other wheelchair arm and began hitting the door in a successful effort to get the guards' attention. (*Id*. ¶¶48-51). After several defendant officers reentered plaintiff's cell, one of the supervisory officers "twisted and ripped" the wheelchair piece from plaintiff – who had his hands up to show that he did not mean any harm – and several other officers held plaintiff down so that "they could forcibly and violently remove him from his chair, kicking him and slamming him to the ground of his cell." (*Id*. ¶¶51-53). One of the defendant supervisory officers threw plaintiff and slammed him into the back wall of his cell while other defendant officers watched but did not intervene. (*Id*. ¶¶54-56). This same supervisory officer, with the assistance of another, held plaintiff down and delivered "at least seven closed fist punches" to plaintiff's head and face. (*Id*. ¶¶58-59). After this beating, defendant officers placed plaintiff in handcuffs, removed his wheelchair from his cell, and walked out. (*Id*. ¶¶60).

In his second amended complaint, plaintiff brings claims for: excessive force (Count I); failure to intervene (Count II); and failure to provide medical attention (Count III). Plaintiff further asserts a *Monell* claim against Sheriff Dart (Count IV), alleging that he has manifested deliberate indifference by maintaining policies and practices that fail to adequately address mental health emergencies that may occur within Cook County Jail. Finally, in Count V,

plaintiff seeks to have Cook County indemnify the defendant officers who acted within the scope of their employment.  (*Id*. ¶¶62–108).

## II.     LEGAL STANDARD

!       The allegations in a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  A party may move to dismiss a claim pursuant to Rule 12(b)(6) it if fails "to state a claim upon which relief may be granted," and such a motion tests the legal sufficiency of the complaint and not the merits of the case.  *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 887 (7th Cir. 2012).  To survive a Rule 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Hess v. Garcia*, 72 F.4th 753, 758 (7th Cir. 2023) (cleaned up).  On the other hand, it is well-settled that "a plaintiff ordinarily need not anticipate and attempt to plead around affirmative defenses."  *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016).  Because "affirmative defenses frequently turn on facts not before the court at [the pleading] stage, . . . dismissal is appropriate *only* when the factual allegations in the complaint unambiguously establish all the elements of the defense."  *Id.* (cleaned up).

The Court construes "the complaint in the light most favorable to the [non-moving party] accepting as true all well-pleaded facts and drawing reasonable inferences in the [non-moving party's] favor."  *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).  However, the Court "need not accept as true statements of law or unsupported conclusory factual allegations."  *Id*.  Moreover, "[a] motion under rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and

4

information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

**III.    ANALYSIS**

Defendants now move to dismiss plaintiff's claims for excessive force and failure to intervene (Counts I and II) pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). In particular, defendants assert that plaintiff received a felony conviction pursuant to 720 ILCS 5/31-1(a-7) for resisting or obstructing a correctional officer during the May 11, 2020 incident,[1] and that this conviction bars his excessive force and failure to intervene claims under the holding in *Heck v. Humphrey*, 512 U.S. 177 (1994). Plaintiff disagrees and asserts that his claims are not barred by *Heck*. The Court agrees with plaintiff.

The Seventh Circuit summarized the Supreme Court's holding in *Heck v. Humphrey* as follows:

> *Heck* is grounded in the 'strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.' *Heck*, 512 U.S. at 484 . . . .Specifically, *Heck* holds that before a §1983 plaintiff may recover damages for alleged harm 'caused by actions whose unlawfulness would render a conviction or sentence invalid,' the plaintiff must first prove that his conviction or sentence has been reversed, expunged, or called into question by the grant of a petition for habeas corpus. *Id.* at 486-87 . . . . The rule is intended to prevent 'collateral attack on [a] conviction through the vehicle of a civil suit.' *Id.* at 484 . . . . Since §1983 'creates a species of tort liability,' *id.* at 484 . . . ., the *Heck* rule underscores 'the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments . . . .' *id.* at 486 . . . .
>
> To properly apply *Heck*'s bar against certain damage actions, a district court must analyze the relationship between the plaintiff's §1983 claim and the charge on which he was convicted. As the Supreme Court explained, 'the district court must

---

[1] Defendants attached to their motion to dismiss a "certified statement of conviction/disposition" (printed on April 26, 2023), which shows that plaintiff pled guilty to the above criminal offense on July 7, 2022. (Dckt. 54-1 at 6). Defendants (without objection by plaintiff) urge this Court to take judicial notice of the certified statement of conviction and the Court will do so consistent with the practice within this District. *See, e.g., Johnson v. City of Chicago*, No. 20 C 7222, 2021 WL 4438414, at *1 n.2 (N.D.Ill. Sept. 28, 2021); *Brisco v. Stinar*, No. 19-CV-7233, 2020 WL 7027719, at *4 (N.D.Ill. Nov. 30, 2020).

5

> consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . . . . *Id.* at 487 . . . . If so, the complaint must be dismissed until the plaintiff can show the conviction or sentence has been invalidated. *Id.* However, 'if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed. . . . '

*VanGilder v. Baker*, 435 F.3d 689, 691-92 (7th Cir. 2006) (cleaned up). Whether a claim is barred by *Heck* is an affirmative defense that must be plead and proved by a defendant. *See Carrico v. Vanihel*, No. 23-1381, 2023 WL 7015274, at *2 (7th Cir. Oct. 25, 2023) (citing *Courtney v. Butler*, 66 F.4th 1043, 1049 n.1 (7th Cir. 2023)).

"As a general proposition, a plaintiff who has been convicted of resisting arrest or assaulting a police officer during the course of an arrest is not *per se Heck*-barred from maintaining a §1983 action for excessive force stemming from the same confrontation." *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006); *Johnson v Rogers*, 944 F.3d 966, 968 (7th Cir. 2019) ("The propositions 'the suspect resisted arrest' and 'the police used too much force to effect the arrest' can be true at the same time.") (citing cases). The critical question here is whether plaintiff's amended complaint contains factual allegations that "necessarily imply" the invalidity of his conviction. *McCann*, 466 F.3d at 622; *see Mannie v. Campos*, No. 16 C 1068, 2022 WL 5183879, at *5 (N.D.Ill. Oct. 5, 2022) (Plaintiff's conviction under 720 ILCS 5/31-1 "bars him from asserting that he never resisted or obstructed a correctional officer in the performance of his duties or that none of the defendants was ever justified in using any force against him, no matter how slight. If plaintiff's claims rested on these narrow propositions, then his claims would be *Heck*-barred."). In other words, plaintiff's excessive force and failure to intervene claims will be dismissed under the *Heck*-bar only if plaintiff has "affirmatively [pled] himself out of court." *Hyson*, 821 F.3d at 939 (cleaned up).

6

The allegations of plaintiff's amended complaint – construed in the light most favorable to him – do not place his excessive force and failure to intervene claims within the scope of the *Heck*-bar. In particular, plaintiff – who was in the midst of a mental health crisis – does not deny that he obstructed the correctional officers in the function of their duties. To the contrary, plaintiff alleges that he received orders from defendant officers (e.g., to return to his cell) that he did not comply with, and this is consistent with his conviction for resisting or obstructing the correctional officers.

Moreover, although plaintiff alleged that he did not threaten harm to others or exhibit aggressive behavior towards the guards, (Dckt. #51 ¶44), proof of such facts would not be necessary to sustain his conviction under 720 ILCS 5/31-1(A-7). Instead, the statute required only that plaintiff be a proximate cause of an injury that a correctional officer sustained during the process of forcibly returning him to his cell, taking the wheelchair arms out of his hands, or otherwise restraining him. *People v. Wilson*, 935 N.E.2d 587, 592 (Ill.App.Ct. 2010); *People v. Cervantes*, 945 N.E.2d 1193, 1194-97 (Ill.App.Ct. 2011); *People v. Morgan*, 2023 IL App (4th) 220544-U, ¶¶54, 62, 2023 WL 3625735, at *8 (citing *Wilson* and *Cervantes*). Furthermore, the injury suffered by the correctional officer need not have been serious or caused by plaintiff's "fierce" resistance (as defendants wrongly assert (Dckt. #62 at 4)). *See Morgan*, 2023 WL 3625735, at *10 (holding that a violation of 720 ILCS 5/31-1(a-7) does not require "great bodily harm" and that the definition of "injury" includes bruises and scrapes); *Cervantes*, 945 N.E.2d at 1194-96 (affirming defendant's conviction under 720 ILCS 5/31-1(a-7) where the peace officer was injured by falling while chasing defendant and not by any force applied to him by defendant). In sum: plaintiff's allegations do not "necessarily" imply the invalidity of his conviction because they do not preclude the possibility that one (or more) of the defendant

7

correctional officers sustained the type of injury required by the statute during the course of the May 11, 2020 incident. *Gilbert v. Cook*, 512 F.3d 899, 902 (7th Cir. 2008).

Finally, plaintiff's allegations indicate that defendant officers continued to use force against him even after he ceased any arguable resistance or obstruction to their efforts to obtain his compliance. In particular, as explained above, certain defendant officers – in view of others who watched without intervention – forcibly and violently removed plaintiff from his chair, kicked him, slammed him to the ground, and punched him at least seven times in the head and face *after* he raised his hands in the air as a sign of submission. (Dckt. #51 ¶¶51-59). Plaintiff's claims for excessive force and failure to intervene arising from these events would not invalidate his conviction for his acts of obstruction/resistance during an earlier stage of the incident. "Otherwise guards (and for that matter any public employee) could maul anyone who strikes them, without risk of civil liability as long as the private party is punished by criminal prosecution or prison discipline for the initial wrong." *Gilbert*, 512 F.3d at 901; *Moore v. Mahone*, 652 F.3d 722, 723–24 (7th Cir. 2011) (citing *Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010) (finding that a plaintiff who pled guilty to resisting arrest could avoid the *Heck* bar where he proceeds on a proposition "that the police beat him severely even after reducing him to custody")).

For these reasons, the Court declines to dismiss plaintiff's excessive force claims in Count I pursuant to *Heck*. Furthermore, because defendants essentially concede that plaintiff's excessive force claim and failure to intervene claim rise and fall together, (*see* Dckt. #54 at 8 & #62 at 5) – and present no other argument in support of dismissal – Count II likewise survives the motion to dismiss.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss Counts I and II, (Dckt. #54), is denied. Defendants shall answer plaintiff's second amended complaint by October 21, 2024. On or before November 4, 2024, the parties shall file a joint initial status report in accordance with the template available on the Court's website under the case management procedure titled "Initial Status Report for Newly Filed Cases."

**Date: September 30, 2024**

_____
**Jeffrey I. Cummings
United States District Court Judge**